[Crim. No. 2075. Second Appellate District, Division Two.—July 9, 1931.]

THE PEOPLE, Respondent, v. BOLIN C. FRANKLIN, Appellant.

W. B. Heinecke and Joseph P. Guerin for Appellant.

U. S. Webb, Attorney-General, and Ralph O. Marron, Deputy Attorney-General, for Respondent.

ARCHBALD, J., *pro tem.*—Defendant was accused by information of the crime of murder and the jury returned a verdict finding him guilty of manslaughter. From an order denying his motion for a new trial and from the judgment entered on said verdict he has appealed.

Appellant contends: (1) That the verdict is contrary to the evidence, (2) that there is no competent evidence to support the verdict, (3) that the court erred in refusing to give certain instructions and also in modifying certain others requested by defendant, and (4) that the district attorney was guilty of misconduct in several particulars, which prejudiced the jury and prevented defendant from having a fair and impartial trial.

The evidence shows that on the day in question the decedent, James R. Gentry, who had something over $200 in his possession when he entered defendant's barber-shop, was shot by defendant between 2 and 3 o'clock in the afternoon of that day, in a room in the rear of the establishment. The only parties present at the time, and who were witnesses to whatever may have transpired immediately preceding the shooting, were the decedent, the defendant and one Cooper, a barber who worked in defendant's shop. Henry Baker, a witness for the prosecution, testified that he, together with Gentry, Cooper and another young man, the defendant also being present, engaged in a dice game in the room in which Gentry was shot between the hours of 11 A. M. and 12 M. of the day on which Gentry was killed; that Gentry was winning and expressed a desire to quit, but that defendant said to him: "You will stay and gamble. I will make you stay. I have something here to make you stay," raising his coat as if showing a gun; that Gentry then said that he had something to protect himself with, displaying a knife, which, however, was closed; that defendant then remarked, "I have got something here to beat that." The witness further testified that he and the "other fellow" then left, leaving Gentry, Cooper and defendant "standing around". The witness John Davis testified that he was sitting "out on the sidewalk on a cracker box" in front of a poolroom next to the barber-shop about 3 o'clock P. M. of that day, when he heard a pistol fired "two or three times in succession—fast"; that he got up and looked through

the window of the barber-shop "and I seen him [defendant] run into the front from the back with a pistol in his hand", facing toward the front of the shop; that defendant ran out of the front door and slammed it behind him and "stood there with it [the pistol] in his hand . . . and looked like he was trying to get an aim at someone"; that he saw Gentry "coming walking up to the front, stagger first on one side and to the other from out of the back"; that Gentry fell over and "his head struck the window, breaking the window out"; that "just the minute his head went through the window he [defendant] took the barrel in his hand and hit him and knocked him back" into the shop, "and he fell backwards". The witness Albert McCarthy testified that he was in a bakery shop in the vicinity between 2 and 3 o'clock P. M. of the day in question and heard shots fired in rapid succession; that upon running out into the street he saw defendant backing out of the door of the barber-shop, while Gentry was staggering forward toward the door with an open knife in one hand and "a wad of money" in the other. The autopsy surgeon testified that three bullets struck Gentry, one passing through the right lung and another through the tip of both ventricles of the heart and that these caused his death. He also testified that there was a deep scalp wound directly over a depressed skull fracture.

It would seem that if there were no other evidence the jury might well draw the conclusion which it did, from the little we have mentioned. Appellant urges that the evidence of Baker and Davis is unworthy of belief. The question of the credibility of the witnesses is exclusively for the jury (sec. 1847, Code Civ. Proc.). "If in any criminal case there be evidence adduced logically tending and legally sufficient to prove the guilt of a defendant, this court cannot, and will not, disturb the jury's determination . . . The province of the jury in weighing evidence and determining the degree of credibility to be accorded the testimony of a witness is, under the rules of law, exclusive. . . . Thus, upon a review of the evidence by this tribunal, we may not examine with minuteness claims that witnesses are discredited, or that their testimony is unworthy of belief, or look to see whether some other conclusion might not have been warranted by the evidence." (*People* v. *Durrant,* 116 Cal. 179, 200 [48 Pac. 75,

79].) So we must conclude that there is sufficient evidence to support the verdict.

█ (3) Appellant does not claim the instructions given were erroneous statements of the law, but insists that as to two of them—which were to the effect that "where one is making a felonious assault upon another", or has "created an appearance justifying that other" in making a counter-attack in self-defense, the original assailant cannot avail himself of the plea of self-defense unless "he has first and in good faith declined further combat, and fairly notified him that he has abandoned the contest", and that "whenever an assault is brought upon a person by his own procurement, or under an appearance of hostility which he himself creates with a view of having his adversary act upon it, and he so acts and is killed, the plea of self-defense is unavailing"—the evidence does not show any circumstances justifying them, as there were only two living eye-witnesses to the combat, defendant and Cooper. The testimony of the witness Baker would seem to justify the giving of such instructions, leaving it to the jury to accept such testimony or reject it in favor of that of defendant and Cooper. In view of the fact that the first story told by both defendant and Cooper was that Gentry came into the shop from the street, while defendant was counting his money previous to banking the same, and held the latter up, and that neither of them had ever seen him before, together with their subsequent stories and evidence that defendant did not have the amount of money found in decedent's hand after the shooting and that the latter did, and that Gentry was in fact known to both of them, we cannot say that the jury was not justified in believing Baker and in rejecting the evidence of both defendant and Cooper, except in particulars wherein the jurors felt it was corroborated by other testimony.

█ We see no error in the instructions questioned nor (4) do we find anything prejudicial in the actions of the district attorney assigned as misconduct. In every case where the prosecutor did go beyond the proper limits the court at the request of defendant properly told the jury to disregard such action or remark. We have, however, made an examination of the entire record and have read all the evidence, and we fail to see how any such claimed mis-

conduct or misdirection of the jury could have resulted in prejudice to appellant in any way.

Judgment and order affirmed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.